IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JEFFREY A. SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>KAMD HOLDINGS, INC.<br><br>    Defendant. | CIVIL ACTION NO. _____ |

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW, Plaintiff Jeffrey A. Smith ("Plaintiff"), by and through his undersigned counsel, and files this Complaint against Defendant KAMD Holdings, Inc. ("Defendant" or "KAMD"), and states as follows:

## INTRODUCTION

1. This is an action commenced by Plaintiff against Defendant for breach of contract arising out of Defendant's violation of Plaintiff's Employment Agreement with Defendant and Amendia, Inc. ("Amendia"), which contains an Executive Put Right provision, and Defendant's violation of Plaintiff's Separation Agreement with Defendant and Amendia, which requires Defendant to pay Plaintiff in accordance with the Executive Put Right provision contained in the Employment Agreement.

## **VENUE AND JURISDICTION**

2. Plaintiff Jeffrey A. Smith is a resident of the State of Georgia, residing at Fulton, Georgia.

3. Defendant KAMD Holdings, Inc. is a Delaware corporation with its principle place of business located at 111 Radio Circle, Mt. Kisco, New York 10549.

4. Defendant is subject to the jurisdiction and venue of this Court.

5. Defendant may be served with process by service upon its registered agent Corporate Service Company at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, County of New Castle or by service upon Defendant's President, Christopher Anderson, at 111 Radio Circle, Mt. Kisco, New York 10549.

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as this is a civil action between a Delaware corporation and a citizen of the State of Georgia and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in the U.S. District Court of the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 1391(b), because the contracts at issue were entered into and breached in this district and the operative events, acts, and omissions occurred in this district.

## FACTS

8. Amendia is a Georgia corporation that designs, develops, manufactures, and markets medical devices used in spinal surgical procedures.

9. Plaintiff was the Chief Executive Officer of Amendia from 2008 to January 31, 2017.

10. In 2016, KAMD Merger Sub, Inc. was merged with and into Amendia.

11. Amendia is a wholly owned subsidiary of KAMD Buyer, Inc.

12. KAMD Buyer, Inc. is a wholly owned subsidiary of Defendant.

13. Corresponding with the merger of KAMD Merger Sub, Inc. into and with Amendia, Plaintiff, Amendia, and Defendant entered into an Amended and Restated Employment Agreement ("Employment Agreement") on August 3, 2016, under which the parties agreed that Amendia would continue to employ Plaintiff as its Chief Executive Officer. A true and correct copy of the Employment Agreement is attached hereto as **Exhibit A**.

14. Pursuant to Section 2(g)(ii) of the Employment Agreement, part of Plaintiff's compensation included share repurchase of some of Plaintiff's Rollover Shares. *See* Exhibit A. Specifically, upon the effective date of the Employment Agreement, Plaintiff held Rollover Shares in the following amounts: (a) 521,000 shares of common stock of Defendant under Plaintiff's own name, and (b) 960,000 shares of common stock of Defendant under Plaintiff's IRA. *Id*. Pursuant to the

Employment Agreement, Defendant purchased 740,500 of Plaintiff's Rollover Shares for $740,500, leaving Plaintiff with 740,500 Rollover Shares remaining.

15. Section 4(c) of the Employment Agreement provides that Plaintiff may terminate his employment for "Good Reason" by "(i) providing written notice to the Company specifying in reasonable detail the condition giving rise to the Good Reason no later than the thirtieth (30th) day following the date that the condition occurred; (ii) providing the Company a period of thirty (30) days to remedy the condition so specified in the notice; and (iii) terminating his employment for Good Reason within thirty (30) days following the expiration of the period to remedy if the Company fails to remedy the condition." *See* Exhibit A. Under the Employment Agreement, "Good Reason" for termination includes Plaintiff's election to voluntarily resign on or before June 30, 3017. *Id*.

16. Section 5(e) of the Employment Agreement contains an "Executive Put Right" provision, which provides:

> In the event of any termination of the Executive's employment by the Company pursuant to Section 4(b) above or by the Executive pursuant to Section 4(c) above, the Executive may irrevocably elect to sell to Parent all or any portion of the Rollover Shares at a price per share equal to the greater of $1.00 (one dollar) per share, or the Fair Market Value (as such term is defined in the Stockholders Agreement) of such Rollover Shares as of the date of the closing of such sale (the "Put Repurchase Amount") by delivering a Put Notice to Parent not later than thirty (30) days following the date of such termination. Parent agrees to pay the Repurchase Amount in cash to the Executive within thirty (30) days of receipt of a Put Notice that is delivered in accordance with the terms of this Section 5(e) (or, if

4

later, the date that is six (6) months and one (1) day following the date the Rollover Shares were initially issued by the Company), pursuant to a separate repurchase agreement containing customary terms. Notwithstanding the foregoing, Parent will not be required to effect such repurchase (or a portion thereof) to the extent such repurchase (or any portion thereof) would (i) violate any provision of Parent's, the Company's or any of its Affiliates' equity arrangements or any covenants imposed by any debt arrangements of Parent, the Company or any of its Affiliates, or (ii) leave Parent or the Company, in the good faith discretion of the Board, with insufficient funds to conduct all or any portion of the business thereof; provided, however, that as soon as reasonably practicable after the restrictions in clauses (i) or (ii) no longer apply, the Company shall, at the Executive's election, repurchase the Rollover Shares at the Fair Market Value of such Rollover Shares as of the date of the closing of such repurchase in accordance with the terms of this Section 5(e).

*See* Exhibit A.

17. On January 24, 2017, pursuant to Section 4(c) of the Employment Agreement, Plaintiff sent a notice of resignation for "Good Reason" to Dr. Scott Bruder, Chairman of the board of Amendia, stating that he was electing to voluntarily resign his employment with Amendia. A true and correct copy of Plaintiff's resignation letter is attached hereto as **Exhibit B**.

18. Plaintiff's last day of employment with Amendia was January 31, 2017.

19. In light of Plaintiff's resignation, Plaintiff, Amendia, and Defendant began discussions regarding Plaintiff's separation agreement in accordance with the requirements set forth in the Employment Agreement.

20. On February 20, 2017, Plaintiff exercised his Executive Put Right pursuant to the terms of Section 5(e) of the Employment Agreement, by sending Dr. Bruder notice of his intention to sell to Defendant his remaining 740,500 Rollover Shares. A true and correct copy of the Exercise of Put Right letter is attached hereto as **Exhibit C**.

21. On February 24, 2017, Christopher W. Anderson, President of Defendant, responded to Plaintiff's February 20, 2017 exercise of the Executive Put Right, stating that "[t]he Company is not in a financial position to repurchase the Rollover Shares at this time and in accordance with Section 5(e) of the Agreement, will not effect this repurchase until such future time that the limitations described in such Section 5(e) no longer apply." A true and correct copy of Mr. Anderson's February 24, 2017 correspondence is attached hereto as **Exhibit D**.

22. In April 2017, Amendia acquired Spinal Elements, Inc. ("Spinal Elements").

23. After Amendia acquired Spinal Elements, Amendia began to do business under the name Spinal Elements, Inc.

24. In April of 2017, Plaintiff, Amendia, and Defendant entered into a Separation Agreement under which Defendant and Plaintiff acknowledged that Plaintiff had exercised his Executive Put Right set forth in Section 5(e) of the Employment Agreement as to the 740,500 Rollover Shares held by Plaintiff in

6

accordance with Section 2(g)(ii) of the Employment Agreement. A true and correct copy of the Separation Agreement is attached hereto as **Exhibit E**. The Separation Agreement further provided that Defendant "states that it is not in a financial position to repurchase the Rollover Shares at this time, and in accordance with Section 5(e) of the Employment Agreement, will effect such a repurchase at such future time that the limitations described in such Section 5(e) no longer apply." *See* Exhibit E.

25. Defendant and Plaintiff agreed to the Separation Agreement, however Defendant did not return to Plaintiff a copy of said agreement signed by Defendant. A true and correct copy of the correspondence between the parties accepting the terms of the Separation Agreement is attached hereto as **Exhibit F**.

26. On September 14, 2017, counsel for Plaintiff sent a letter to Jennifer Cormier, counsel for Defendant, stating that should Defendant continue to maintain the position that it is not required to purchase Plaintiff's shares pursuant to the Executive Put Right contained in the Employment Agreement, Plaintiff requests that Defendant provide proof of the reasons it contends it is excused from performance. A true and correct copy of this September 2017 letter is attached hereto as **Exhibit G**.

27. On October 12, 2017, Ms. Cormier responded to Plaintiff's counsel's September 14, 2017 correspondence maintaining that Defendant's Board of Directors had determined that repurchasing the Rollover Shares at that time would

leave Defendant and Amendia with insufficient funds to conduct their business. A true and correct copy of this October 2017 letter is attached hereto as **Exhibit H**.

28. On September 11, 2018, counsel for Plaintiff sent a Demand for Inspection of Books and Records Letter pursuant to Section 220(b) of the Delaware General Corporation Law to Defendant ("Demand for Inspection"), demanding access to the books and records of Defendant. A true and correct copy of the September 2018 Demand for Inspection Letter is attached hereto as **Exhibit I**. This Demand for Inspection specifically requested information, including minutes of meetings of Defendant's board, relating to Defendant's financial status, cash flow, and the basis for Defendant's refusal to repurchase Plaintiff's Rollover Shares due to Defendant's alleged financial incapacity to do so and Defendant's board's alleged determination that repurchasing Plaintiff's shares would leave Defendant and Amendia with insufficient funds to conduct their business. *See* Exhibit I. The Demand was sent for the purpose of examining whether Defendant had a proper basis for its refusal to repurchase Plaintiff's shares.

29. On September 21, 2018, Defendant's counsel responded to the Demand for Inspection. A true and correct copy of this correspondence is attached hereto as **Exhibit J**. In this correspondence, Defendant's counsel did not provide, or indicate that it would provide, the information requested in the Demand for Inspection, which Plaintiff is legally entitled to inspect as a shareholder of Defendant. Defendant's

counsel also did not provide a basis as to why Defendant would not permit Plaintiff to inspect the documents set forth in the Demand for Inspection. *See* Exhibit J.

30. Instead, Defendant's counsel provided a cryptic message, stating that due to a restricted payment covenant from "Amendia's/Spinal Elements first lien credit agreement with Antares, Fifth Third and other lenders", Amendia and Spinal Elements are restricted "from upstreaming money to KAMD Holdings (where Jeff was a stockholder) to buy back stock." *See* Exhibit J. The email also contained some language allegedly taken from a credit agreement, which provides in part:

> 5.11 Restricted Payments. No Credit Party shall, and no Credit Party shall suffer or permit any of its Subsidiaries to, (i) declare or make any dividend payment or other distribution of assets, properties, cash, rights, obligations or securities on account of any Stock or Stock Equivalent, (ii) purchase, redeem or otherwise acquire for value any Stock or Stock Equivalent now or hereafter outstanding, or (iii) make any payment or prepayment of principal of, premium, if any, interest, fees, redemption, exchange, purchase, retirement, defeasance, sinking fund or similar payment with respect to, Subordinated Indebtedness (the items described in clauses (i), (ii) and (iii) above are referred to as "Restricted Payments"); except that any Wholly-Owned Subsidiary of the Borrower may declare and pay dividends to the Borrower or any Wholly-Owned Subsidiary of the Borrower and except that:
>
> * * *
>
> (g) as long as no Default or Event of Default has occurred and is continuing or would arise as a result of such Restricted Payment, the Credit Parties may make other Restricted Payments (other than redemptions by the Borrower of Stock or Stock Equivalents held by current or former officers, directors and employees of Holdings or its Subsidiaries or distributions by the Borrower to Holdings which are immediately used by Holdings to redeem Stock and Stock

9

> Equivalents from current or former officers, directors and employees of Holdings or its Subsidiaries) as long as the aggregate amount of all such Restricted Payments does not exceed $500,000 in any Fiscal Year.

*See* Exhibit J.

31. Not only does Defendant's counsel's response fail to provide the information requested in the Demand for Inspection, it's reference to this supposed credit agreement for "Amendia/Spinal Elements" provides no information as why Defendant KAMD Holdings, Inc. is unable to repurchase Plaintiff's Rollover Shares in accordance with the Employment Agreement. *See* Exhibit J.

32. Accordingly, on September 26, 2018, Plaintiff's counsel responded to Defendant's counsel's response, stating that Plaintiff's counsel response does not respond Plaintiff's Demand for Inspection and fails to explain Defendant's failure to repurchase Plaintiff's Rollover Shares in accordance with the Employment Agreement. *See* Exhibit J. Plaintiff's counsel went on to state that if there is a contractual barrier to purchasing Plaintiff's interest, Defendant should produce the contract in its entirety, along with the other information requested in the Demand for Inspection. *Id.*

33. As of the date of filing this Complaint, Defendant and Defendant's counsel have failed to respond to Plaintiff's counsel's September 26, 2018 correspondence.

34. Furthermore, as of the date of filing this Complaint, Defendant and Defendant's counsel have failed to provide a response to Plaintiff's Demand for Inspection that provides, or indicates that Defendant will provide, the information requested in the Demand for Inspection, or that states that Defendant will not permit Plaintiff to inspect the documents set forth in the Demand for Inspection.

35. As of the date of filing this Complaint, Defendant has not repurchased any of the 740,500 Rollover Shares held by Plaintiff.

36. Upon information and belief, Defendant's repurchase of Plaintiff's Rollover Shares would not violate any provision of Defendant's, Amendia's or any of its affiliates' equity arrangements or any covenants imposed by any debt arrangements of Defendant, Amendia or any of its affiliates.

37. Upon information and belief, Defendant's repurchase of Plaintiff's Rollover Shares would not leave Defendant or Amendia with insufficient funds to conduct all or any portion of the business thereof.

38. Upon information and belief, Defendant's Board of Directors never determined, in their good faith discretion, that Defendant's repurchase of Plaintiff's Rollover Shares would leave Defendant or Amendia with insufficient funds to conduct all or any portion of the business thereof.

39. Upon information and belief, Defendant never intended to repurchase Plaintiff's Rollover Shares.

40. Upon information and belief, to the extent that any barrier exists to the repurchase of Plaintiff's Rollover Shares, Defendant knew that such barrier existed at the time it entered into the Employment Agreement and did not inform Plaintiff of such barrier.

41. Defendant's continuous refusal to repurchase any of Plaintiff's 740,500 Rollover Shares constitutes a breach of the Employment Agreement and the Separation Agreement.

## **COUNT I - BREACH OF EMPLOYMENT AGREEMENT**

42. Plaintiff incorporates and re-alleges paragraphs 1 through 41 as if fully set forth herein.

43. For good and valuable consideration, Plaintiff and Defendant entered into the Employment Agreement.

44. The Employment Agreement constitutes a valid, binding contract.

45. Plaintiff has fully performed his obligations under the Employment Agreement.

46. Defendant breached and continues to breach the Employment Agreement by failing to repurchase Plaintiff's Rollover Shares.

47. As a result of Defendant's breach of the Employment Agreement, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $740,500.

## COUNT II - BREACH OF SEPARATION AGREEMENT

48. Plaintiff incorporates and re-alleges paragraphs 1 through 47 as if fully set forth herein.

49. For good and valuable consideration, Plaintiff and Defendant entered into the Separation Agreement.

50. The Separation Agreement constitutes a valid, binding contract.

51. Plaintiff has fully performed his obligations under the Separation Agreement.

52. Defendant breached and continues to breach the Separation Agreement by failing to repurchase Plaintiff's Rollover Shares.

53. As a result of Defendant's breach of the Separation Agreement, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $740,500.

## COUNT III – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

54. Plaintiff incorporates and re-alleges paragraphs 1 through 53 as if fully set forth herein.

55. In Georgia, a duty of good faith and fair dealing is implied in all contracts.

56. Defendant failed to act in good faith by refusing to repurchase Plaintiff's Rollover Shares without proper basis.

57. As a result of Defendant's breach of its duty of good faith and fair dealing, Plaintiff has been damaged in an amount to be determined at trial.

## **COUNT IV – FRAUD IN THE INDUCEMENT**

58. Plaintiff incorporates and re-alleges paragraphs 1 through 57 as if fully set forth herein.

59. Defendant fraudulently induced Plaintiff into entering into the Employment Agreement by making false representations by omission by failing to divulge to Plaintiff the material fact that a barrier existed to the repurchase of Plaintiff's Rollover Shares at the time of forming the Employment Agreement.

60. Defendant's omission was material, knowingly false when made, and made with the intent to defraud Plaintiff.

61. Defendant knew that a barrier existed to the repurchase of Plaintiff's Rollover Shares at the time it entered into the Employment Agreement and did not disclose this information to Plaintiff.

62. Defendant omitted the material fact that a barrier existed to the repurchase of Plaintiff's Rollover Shares at the time of forming the Employment Agreement with the intent of Plaintiff relying upon this omission and entering into the Employment Agreement.

63. Plaintiff justifiably and reasonably relied on Defendant's omission by entering into the Employment Agreement.

64. As a result of Plaintiff's reasonable reliance upon Defendant's omission of material fact, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT V – PUNITIVE DAMAGES

65. Plaintiff incorporates and re-alleges paragraphs 1 through 64 as if fully set forth herein.

66. Defendant's actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences.

67. Defendant acted with the specific intent to cause harm.

68. Plaintiff is entitled to an award of punitive damages against Defendant, determined by the enlightened conscience of the jury, in an amount sufficient to deter, penalize, and punish Defendant in light of the circumstances of this case, as provided in O.C.G.A. § 51-12-5.1, and other applicable law.

## COUNT VI - ATTORNEYS FEES

69. Plaintiff incorporates and re-alleges paragraphs 1 through 68 as if fully set forth herein.

70. Defendant has acted in bad faith, been stubbornly litigious, and has caused Plaintiff unnecessary trouble under O.C.G.A. § 13-6-11, in amount to be proven at trial.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all claims triable of right to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

a. That Plaintiff recover money damages of $740,500.00 representing the amount owed pursuant to the contracts at issue;

b. That Plaintiff also recover actual, direct, consequential, and compensatory damages of Defendant in amounts to be determined at trial;

c. That Plaintiff be awarded punitive damages, in an amount to be determined by the enlightened conscience of the jury at the trial of this matter;

d. That Plaintiff recover pre-judgment interest at the maximum rate allowable by law;

e. That Plaintiff be awarded attorneys' fees and costs of suit; and

f. That Plaintiff be awarded such other and further relief as the Court deems just and proper.

Respectfully submitted this <u>24th</u> day of October, 2018.

*/s/ Chelsey M. Lewis*
John L. Monroe, Jr.
Georgia Bar No. 516190
jmonroe@fordharrison.com
Chelsey M. Lewis 255795
Georgia Bar No.
cmlewis@fordharrison.com

FORD & HARRISON LLP
271 17th Street, NW
Suite 1900
Atlanta, Georgia 30363
Telephone: 404-888-3800
Facsimile:  404-888-3863

Attorneys for Plaintiff

WSACTIVELLP:10072976.1